UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT PLUNKETT,<br>            Plaintiff,<br>                    v.<br>SANJAY P. RATHI, M.D.,<br>            Defendant. | No. 3:11cv1773 (MPS) |

**RULING AND ORDER**

Invoking this Court's diversity jurisdiction, *pro se* Plaintiff Robert Plunkett sues Doctor

Sanjay P. Rathi, alleging that Dr. Rathi committed medical malpractice by erroneously

diagnosing him as suffering from a fatal illness.  Pending before the Court is Dr. Rathi's Motion

to Dismiss [doc. # 46].  As Mr. Plunkett's claims fail under both New York and Connecticut law,

Dr. Rathi's motion to dismiss is granted.

**I.      Factual and Procedural Background**

Mr. Plunkett alleges the following in his Amended Complaint [doc. # 45].  In November

1990, Mr. Plunkett sought treatment for tremors in his hands from Dr. Rathi, a neurologist, at his

Connecticut office. Dr. Rathi misdiagnosed Mr. Plunkett's condition as being more serious than

it was, informing Mr. Plunkett and his wife that Mr. Plunkett should quit work, that he had nine

years to live, and that he would soon need around-the-clock medical care.[1] Mr. Plunkett went

through his daily activities thinking that every day would be his last, and he believes that the

misdiagnosis contributed to the dissolution of his marriage.

On October 30, 2002, Dr. Rathi repeated his misdiagnosis, sending a fax to Sharon

Plunkett that stated: "[Mr. Plunkett] is completely disabled indefinitely. Dx: spino cerebellar

---

[1] Although the precise nature of the alleged misdiagnosis is unclear from the Amended Complaint, it appears that Dr. Rathi diagnosed Mr. Plunkett with "cerebellar atrophy [d]isorder" or "spino cerebellar atrophy" (Am. Compl. ¶ 14; Ex. 5 to *id.*).  A subsequent MRI revealed no signs of cerebellar atrophy. (*See* Ex. 4 to Am. Compl.)

atrophy." (Ex. 5 to Am. Compl.) Aside from conclusory allegations of a continued doctor-patient relationship made in an exhibit to the Amended Complaint, Mr. Plunkett does not allege any other medical appointments or examinations with Dr. Rathi. Nor does Mr. Plunkett allege that Dr. Rathi provided him with a continuous course of treatment.

On November 2, 2011, Mr. Plunkett filed suit in the United States District Court for the Northern District of New York. Shortly thereafter, the matter was transferred to this District under 28 U.S.C. § 1404(a), as the alleged medical malpractice took place in Connecticut and Defendant resides in Connecticut. (*See* Exs. 2, 3 to Am. Compl.)  After Dr. Rathi first moved to dismiss, Mr. Plunkett filed an amended complaint.  On May 17, 2012, Dr. Rathi filed the pending motion to dismiss, together with the required Notice [doc. # 47] to Mr. Plunkett, *see* D. Conn. L. Civ. R. 12, stating that "the defendant's motion may be granted and your claims may be dismissed without further notice if you do not file opposition papers as required by Rule 12 of the Federal Rules of Civil Procedure . . . ." Notwithstanding the fact that the Court afforded Mr. Plunkett additional time to respond, *see* Order [doc. # 49], Mr. Plunkett has not filed an opposition to the motion to dismiss.  Even though Mr. Plunkett never responded, the Court has an independent obligation to determine whether the pleadings have stated a plausible legal claim.

## II.    Legal Standard

On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences from those allegations in the light most favorable to the plaintiff. *See Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). When filed by a *pro se* plaintiff, a complaint is to

2

be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted); *see also Harris*, 572 F.3d at 72.

## III.  Discussion

Dr. Rathi's initial motion to dismiss argues that Mr. Plunkett's claims of medical malpractice are legally deficient under Connecticut law, because Mr. Plunkett failed to obtain and file a written opinion by a similar health care provider stating that there appears to be evidence of medical negligence, as required by Conn. Gen. Stat. § 52-190a(a). Dr. Rathi's initial motion, however, does not explain why Connecticut law should apply to Mr. Plunkett's claims.[2] In a supplemental memorandum, Dr. Rathi contends that Connecticut law governs this dispute or that, alternatively, the claim is time-barred under New York law.  Drawing inferences for Mr. Plunkett, as the Court must, it is plausible from the pleadings that either Connecticut law or New York law might apply. Nevertheless, as Mr. Plunkett has failed to state a claim for relief under either New York or Connecticut law, his complaint must be dismissed.

### A.     Choice of Law

Ordinarily, when a case is transferred from a federal court in one State to a federal court in another, the transferee court must apply the choice-of-law rules of the State in which the transferor court sits. As this matter was transferred from the United States District Court for the Northern District of New York, the Court ordinarily would apply New York choice-of-law principles.  Dr. Rathi argues, however, that the Court should apply Connecticut rather than New York choice-of-law rules, because a "[t]ransferee court should not be bound by the law of the

---

[2] As the choice-of-law issue was unaddressed, the Court gave leave to the parties to file supplemental briefs on the issue.  Only Dr. Rathi filed a brief.  (*See* Def.'s Supp. Mem. of Law [doc. # 62].)

transferring court unless the case was properly filed in the transferring district."  (Def.'s Supp. Mem. of Law at 1.)  Dr. Rathi is correct about the legal principle.  As the Second Circuit observed,

> If a district court receives a case pursuant to a transfer under 28 U.S.C. § 1406(a), for improper venue, or 28 U.S.C. § 1631, for want of jurisdiction, it logically applies the law of the state in which it sits, since the original venue, with its governing laws, was never a proper option. . . . . In contrast, when a case is transferred for convenience under 28 U.S.C. § 1404(a), the law of the transferor state is to be applied so long as the transferor state could properly have exercised jurisdiction.

*Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010) (citations omitted).  This matter, however, was transferred under § 1404(a), and Dr. Rathi has failed to establish that the Northern District of New York could not properly exercise jurisdiction.[3]  Absent such a showing—which Dr. Rathi has not made—the Court must apply the choice-of-law rules of New York, the transferor state.

Dr. Rathi next argues that under a New York choice-of-law analysis, Connecticut law nevertheless applies.  Where, as here, there is an actual conflict between the laws of two jurisdictions, *compare* Conn. Gen. Stat. § 52-190a, *with* N.Y. C.P.L.R. § 3012-a(f), New York courts apply an "interest analysis"—a "flexible approach intended to give 'controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation.'" *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993) (quoting *Babcock v. Jackson*, 12 N.Y.2d 473, 481 (1963)). This analysis is highly fact-specific.

---

[3] Although the order of transfer under 28 U.S.C. § 1404(a), entered by United States Magistrate Judge David E. Peebles, states that "venue is not proper" in the Northern District of New York (*see* Ex. 3 to Am. Compl.), Dr. Rathi has not offered any legal argument that this statement in the context of a § 1404(a) transfer order converts the order into something akin to a § 1406(a) transfer order, for which the transferee court applies the choice-of-law rules of the State in which it sits. *See Gerena*, 617 F.3d at 204.

Dr. Rathi contends that Connecticut's interests predominate, as Dr. Rathi resides and practices in New Haven, and that Dr. Rathi treated Mr. Plunkett in Connecticut (Def.'s Supp. Mem. of Law at 7.)  If the Court could credit Dr. Rathi's representations that Mr. Plunkett "was a resident of Connecticut when he became a patient of the defendant," and that Mr. Plunkett "presented to the defendant upon a referral and was not solicited in any way" (Def.'s Supp. Mem. of Law at 8), then Connecticut law would likely apply.  The Court cannot, however, draw on facts outside of the pleadings, and, without the benefit of these facts, the Court cannot make the choice-of-law determination definitively.  Disregarding the facts adverted to by Dr. Rathi and considering only the allegations in the complaint, it is plausible that New York law would govern this dispute.  In circumstances similar to this case, a New York court applied New York law in a medical malpractice action, even though the allegedly tortious conduct took place in New Jersey and even though the defendant-hospital was located in New Jersey. *See Kehrley v. Valley Hosp.*, 2001 WL 1422155 (N.Y. Sup. Ct. Aug. 29, 2001).  Dr. Rathi's attempts to distinguish *Kehrley* are unavailing because he asks the Court to consider matters outside of the pleadings, as discussed above.  (*See* Def.'s Supp. Mem. of Law at 8.)

In any event, the Court need not exhaustively consider the choice-of-law issue, because Mr. Plunkett fails to state a claim under either New York or Connecticut law:  If New York law applies, Mr. Plunkett's claim is barred as untimely by N.Y. C.P.L.R. § 214-a, and if Connecticut law governs, his claim fails because he did not comply with the pre-filing requirements of Conn. Gen. Stat. § 52-190a.[4]

---

[4] Although New York's interest-analysis framework differentiates between "conduct regulating" and "loss allocating" rules, *see Lee v. Bankers Trust Co*., 166 F.3d 540, 545 (2d Cir. 1999), the choice-of-law considerations are the same for resolving conflicts regarding statutes of limitations and pre-filing requirements. Statutes of limitations and pre-filing requirements are both considered "loss allocating" rules, insofar as they do not purport to regulate the primary

**B.      New York Law**

Under New York law, medical malpractice claims are timely only if filed within two years and six months of the accrual of the action. *See* N.Y. C.P.L.R. § 214-a; *Bisson v. Martin Luther King Jr. Health Clinic*, 07-5416-CV, 2008 WL 4951045 (2d Cir. Nov. 20, 2008).  Section 214-a provides in full:

> An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure; provided, however, that where the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier. For the purpose of this section the term "continuous treatment" shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition. For the purpose of this section the term "foreign object" shall not include a chemical compound, fixation device or prosthetic aid or device.

N.Y. C.P.L.R. § 214-a. Consistent with its plain language, § 214-a measures accrual on the basis of the occurrence of the alleged medical malpractice, instead of the date when the injury was discovered, unless there has been continuous treatment.  *See id.* (the limitations period begins from "the act, omission or failure complained of"); *see also, e.g.*, *Helgans v. Plurad*, 680 N.Y.S.2d 648, 650 (N.Y. App. Div. 1998) ("[T]he Legislature[] deci[ded] to shorten the period of limitation and to continue to measure accrual of a cause of action for medical malpractice from the date of the occurrence, as opposed to the date of discovery of the injury . . . ."). Mr.

---

conduct itself, but rather are "postevent remedial rules designed to allocate the burden of losses resulting from tortious conduct . . . ." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 199 (1985); *see also Goldsmith v. Sotheby's, Inc*., 859 N.Y.S.2d 420, 421 (N.Y. App. Div. 2008) (concluding that statutes of limitations are "loss-allocating rules inasmuch as they prohibit, assign, or limit liability after the tort occurs" (internal quotation marks and citation omitted)); *Kehrley*, 2001 WL 1422155, at *4 (concluding that New Jersey analogue to Conn. Gen. Stat. § 52-190a is a loss allocating rule). Because the same choice-of-law framework applies to either of the grounds for dismissal, there is no set of facts by which the proper application of the choice-of-law rules would lead the Court to apply New York law for the purposes of the pre-filing requirement and Connecticut law for the purposes of the statute of limitations.

Plunkett's claims are time-barred by operation of this provision.  He alleges that Dr. Rathi negligently diagnosed him as having cerebellum atrophy disorder in 1990 (Am. Compl. ¶ 14) and reiterated this diagnosis via fax on October 30, 2002 (Ex. 5 to *id.*).  There are no allegations of events occurring after October 2002 from which the Court could reasonably infer an act or omission constituting medical malpractice occurred in the two and a half years before Mr. Plunkett initiated his suit, in November 2011.

Further, the Amended Complaint does not give rise to a reasonable inference of "continuous treatment" under N.Y. C.P.L.R. § 214-a.  In an attachment to the operative complaint, which is styled as a Notice of Intent to Initiate Legal Proceedings and is dated July 6, 2011, Mr. Plunkett states that he was under Dr. Rathi's care from "sometime prior to April 1st, 1998, through the present." (Ex. 1 to *id.*)  This vague allegation is insufficient to invoke the "continuous treatment" provision in § 214-a.  The doctrine of "continuous treatment does not contemplate circumstances where a patient initiates return visits merely to have his or her condition checked . . . . The Statute of Limitations may begin to run once a hospital or physician considers the patient's treatment to be completed and does not request the patient to return for further examination."  *McDermott v. Torre*, 56 N.Y.2d 399, 405-06 (1982); *see also* N.Y. C.P.L.R. § 214-a (stating that "'continuous treatment' shall not include examinations undertaken at the request of the patient for the sole purpose of ascertaining the state of the patient's condition").  To be continuous, visits to a doctor must be more frequent than "few and far between." *Duffy v. Vogel*, 855 N.Y.S.2d 440, 441 (N.Y. App. Div. 2008), *rev'd on other grounds*, 12 N.Y.3d 169 (2009).  Thus, a plaintiff must plead facts that make it plausible that the "(1) that 'treatment' subsequent to the malpractice was, in fact, rendered; . . .  (2) that there was no disruption in the course of treatment from when the malpractice originally occurred,"

7

*McDermott*, 56 N.Y.2d at 410; and (3) that the treatment provided was more than sporadic.  As Mr. Plunkett has alleged two appointments with Dr. Rathi—one in 1990 and perhaps another in 2002—and as Mr. Plunkett has not pled that he had any medical appointments with Dr. Rathi after 2002, Mr. Plunkett's allegations do not give rise to a reasonable inference that Dr. Rathi provided him with care that was continuous.[5]  As the "continuous treatment" provision is inapplicable and as the last alleged diagnosis occurred in October 2002, Mr. Plunkett's malpractice claim is time-barred under N.Y. C.P.L.R. § 214-a.[6]

### C.      Connecticut Law

If Connecticut law applies, Mr. Plunkett's claim also fails.  Section 52-190a of the Connecticut General Statutes imposes requirements on a plaintiff before he can bring a medical malpractice action, stating in relevant part that:

> No civil action . . . shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, . . . in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action . . . has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint . . . shall contain a certificate of the . . . party filing the action . . . that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant . . . . To show the existence of such good faith, the claimant . . . shall obtain a written and signed opinion of a similar health care provider . . . that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. . . . The claimant . . . shall retain the original written opinion and shall attach a copy of such written opinion . . . to such certificate.

Conn. Gen. Stat. § 52-190a(a).  As the Connecticut Supreme Court has explained, "the attachment of the written opinion letter of a similar health care provider is a statutory

---

[5] This is particularly true in light of the indications in the Amended Complaint that Mr. Plunkett currently resides in New York (Am. Compl. ¶ 1) and lived in Florida in 2002 (Ex. 5 to *id.*).

[6] "Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."  *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

prerequisite to filing an action for medical malpractice." *Morgan v. Hartford Hosp.*, 301 Conn. 388, 401 (2011); *see also* Conn. Gen. Stat. § 52-190a(c) ("The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action.").

As Dr. Rathi is a "health care provider" and as Mr. Plunkett alleges personal injury resulting from Dr. Rathi's negligence, the requirements of Conn. Gen. Stat. § 52-190a apply. To comply with the statutory prerequisites, Mr. Plunkett, prior to filing suit, was required to obtain a written and signed opinion of a similar health care provider—here, another neurologist—stating that evidence of malpractice exists and providing a "detailed basis for the formation of such opinion." Conn. Gen. Stat. § 52-190a(a). Mr. Plunkett was then required to attach a certification to his complaint stating that, after engaging in a reasonable inquiry, he had a good faith belief that his negligence action was meritorious. *See id.* Mr. Plunkett was further required to attach a copy of the written opinion that he obtained. *See id.* Mr. Plunkett neglected to attach the required certification and written opinion to his original Complaint [doc. # 1]. In his Amended Complaint, Mr. Plunkett includes a statement—which the Court will construe as a certification that he conducted a reasonable inquiry—and attaches five exhibits that he believes meet the requirements of § 52-190a. (*See* Am. Compl. at 7.) None of the five attachments [doc. # 45-1] pass muster, however. Four of the five attachments are irrelevant to his statutory obligations.[7] The fifth is a medical record which appears to be from August 2010 and which states that an MRI of Mr. Plunkett's brain, taken that same month, did "not show any cerebellar atrophy." (Ex. 4 to Am. Compl.) This medical record does not suffice, as it is not an opinion

---

[7] Two of the five attachments are copies of orders issued by Magistrate Judge David E. Peebles, transferring this matter to the District of Connecticut; one is a notice of intent to initiate legal proceedings that Mr. Plunkett sent Dr. Rathi in July 2011; and one is a three-page fax from Dr. Rathi to Sharon Plunkett. (*See* Exs. 1, 2, 3, 5 to Am. Compl.)

about whether Dr. Rathi was negligent. Furthermore, even if the Court could construe this medical opinion as impliedly addressing the adequacy of Dr. Rathi's care, the written statement does not include "a detailed basis for the formation of such opinion." Conn. Gen. Stat. § 52-190a(a). To provide a "detailed basis," an opinion must "state the similar health care provider's opinion as to the applicable standard of care, the fact that the standard of care was breached, and the factual basis of the similar health care provider's conclusion concerning the breach of the standard of care." *Wilcox v. Schwartz*, 303 Conn. 630, 643 (2012). Because the written "opinion" attached to the Amended Complaint does not specifically address Dr. Rathi's actions—much less provide any discussion of the standard of care or how Dr. Rathi's actions deviated from that standard—Mr. Plunkett has not met the requirements of Conn. Gen. Stat. § 52-190a(a). Accordingly, this action must be dismissed. *See* Conn. Gen. Stat. § 52-190a(c) ("The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action.").

IV.     **Conclusion**

    For the reasons stated above, Defendant's Motion to Dismiss [doc. # 46] is GRANTED, and the case is DISMISSED.  Plaintiff's Motion for Clarification [doc. # 61] is DENIED as moot.  **The Clerk is directed to dismiss the action and to close the file.**


                         IT IS SO ORDERED.


                         _____/s/_____
                         Michael P. Shea, U.S.D.J.


Dated:          Hartford, Connecticut
                May 13th, 2013